G. DAVID ROBERTSON, ESQ. (NV Bar 1001)
ANTHONY G. ARGER, ESQ. (NV Bar 13660)
Robertson, Johnson, Miller & Williamson
50 West Liberty Street, Suite 600
Reno, Nevada 89501
Telephone No.: (775) 329-5600
Facsimile No.: (775) 348-8300
Gdavid@nvlawyers.com
Anthony@nvlawyers.com
*Attorneys for Defendant and Counterclaimant Michael Higgins*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

COAST TO COAST HOLE IN ONE, LLC,
A Nevada Limited Liability Company, TERRY
ULLESEIT, DENISE I. GEORGE,

    Plaintiffs,

    vs.

MICHAEL HIGGINS, an individual; TRACY
HIGGINS, an individual; HOLE IN ONE
PROMOTIONS, LLC, a Massachusetts Limited
Liability Company; and DOES I through X; ABC
CORPORATIONS I through X; and BLACK AND
WHITE COMPANIES I through X, inclusive,

    Defendant.

Case Number:   3:24-cv-00195-CSD

**MICHAEL HIGGINS' ANSWER
TO PLAINTIFFS' COMPLAINT,
AND COUNTERCLAIM**

COMES NOW, Defendant MICHAEL HIGGINS, an individual ("Defendant" or "Michael"), by and through his counsel of record, Robertson, Johnson, Miller & Williamson, and hereby files this answer ("Answer") to Plaintiffs' Complaint ("Complaint") as follows[1]:

## PARTIES

1.     The first sentence of paragraph 1 of the Complaint asserts a legal conclusion with respect to the term "formed" and Defendant therefore neither admits nor denies same. Defendant admits remaining allegations of paragraph 1 of the Complaint.

---

[1] Defendant did not answer the Complaint filed in State Court prior to removal. Pursuant to FRCP 81(c)(2), Defendant's Answer is due the longer of "21 days after being served with the summons for an initial pleading on file at the time of service," or "7 days after the notice of removal is filed." Defendant Michael Higgins was served with the summons and initial pleading – the Complaint – on April 20, 2024. This action was removed on April 30, 2024. Thus, the longer period to respond is 21 days from April 20, 2024, which 21st day fell on a Saturday.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 1

2.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 2 of the Complaint, and therefore denies same.

3.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 3 of the Complaint, and therefore denies same.

4.      Defendant admits that he is an individual that resides in Shrewsbury, Commonwealth of Massachusetts, and that he is a member and manager of Coast to Coast Hole in One, LLC ("Coast to Coast"), but denies the remaining allegations set forth in paragraph 4 of the Complaint.

5.      Defendant admits that Tracy Higgins is his wife, but denies the remaining allegations in paragraph 5 of the Complaint.

6.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 6 of the Complaint, and therefore denies same.

7.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 7 of the Complaint, and therefore denies same.

8.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 8 of the Complaint, and therefore denies same.

9.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 9 of the Complaint, and therefore denies same.  This allegation also calls for a legal conclusion that Defendant cannot answer.

**JURISDICTION AND VENUE**

10.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations contained in paragraph 10 of the Complaint, and therefore denies same.

11.      Defendant admits that Coast to Coast is a Nevada limited liability company, but denies the remaining allegations in paragraph 11 of the Complaint, as venue is not proper in Washoe County as to all defendants, and Defendant is currently without sufficient information to form a belief as to the truth of the remaining allegations in paragraph 11 of the Complaint.

12.      Defendant denies the allegations in paragraph 12 of the Complaint.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno. Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 2

## **GENERAL ALLEGATIONS**

13.     Defendant admits the allegations in paragraph 13 of the Complaint.

14.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 14 of the Complaint, and therefore denies same.

15.     Defendant admits that he dedicated significant time, energy, and effort into making Coast to Coast a profitable business, but denies the remaining allegations in paragraph 15 of the Complaint.

16.     Defendant admits that he, Terry Ulleseit ("Ulleseit") and Denise I. George ("George") caused to be prepared an Operating Agreement for Coast to Coast, but the remaining allegations of paragraph 16 assert legal conclusions and otherwise mischaracterize the agreements reached, and Defendant therefore denies same.

17.     Defendant admits that in or around 2023 and early 2024 he, Ulleseit and George commenced discussions of how to separate Michael from Coast to Coast as a result of Ulleseit and George's greed and refusal to abide by the terms of their agreements, that they all agreed that Michael's interest in the company would be bought out, and that he would take his clients with him and continue to service them, but denies the characterization of the terms discussed and/or outlined as set forth in paragraph 17 of the Complaint, and therefore denies the allegations in paragraph 17 of the Complaint.

18.     Defendant admits that he is a member and manager of Coast to Coast, but neither admits nor denies the remaining allegations of paragraph 18 of the Complaint because they assert legal conclusions.

19.     Paragraph 19 of the Complaint asserts a legal conclusion and thus Defendant neither admits nor denies same.

20.     Paragraph 20 of the Complaint asserts a legal conclusion and thus Defendant neither admits nor denies same.

21.     Defendant denies the allegations in paragraph 21 of the Complaint.

          a.     Defendant denies the allegations in paragraph 21(a) of the Complaint.

          b.     Defendant denies the allegations in paragraph 21(b) of the Complaint.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 3

c.      Defendant denies the allegations in paragraph 21(c) of the Complaint.

d.      Defendant denies the allegations in paragraph 21(d) of the Complaint.

e.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(e) of the Complaint, and therefore denies same.

f.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(f) of the Complaint, and therefore denies same.

g.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(g) of the Complaint, and therefore denies same.

h.      Defendant denies the allegations in paragraph 21(h) of the Complaint.

i.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(i) of the Complaint, and therefore denies same.

j.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(j) of the Complaint, and therefore denies same.

k.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(k) of the Complaint, and therefore denies same.

l.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(l) of the Complaint, and therefore denies same.

m.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(m) of the Complaint, and therefore denies same.

n.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(n) of the Complaint, and therefore denies same.

o.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(o) of the Complaint, and therefore denies same.

p.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(p) of the Complaint, and therefore denies same.

q.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(q) of the Complaint, and therefore denies same.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 4

r.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(r) of the Complaint, and therefore denies same.

s.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(s) of the Complaint, and therefore denies same.

t.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(t) of the Complaint, and therefore denies same.

u.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(u) of the Complaint, and therefore denies same.

v.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(v) of the Complaint, and therefore denies same.

w.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(w) of the Complaint, and therefore denies same.

x.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(x) of the Complaint, and therefore denies same.

y.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(y) of the Complaint, and therefore denies same.

z.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(z) of the Complaint, and therefore denies same.

aa.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(aa) of the Complaint, and therefore denies same.

bb.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(bb) of the Complaint, and therefore denies same.

cc.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(cc) of the Complaint, and therefore denies same.

dd.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(dd) of the Complaint, and therefore denies same.

ee.    Defendant denies the allegations in paragraph 21(ee) of the Complaint.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno. Nevada 89501

ff.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(ff) of the Complaint, and therefore denies same.

gg.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(gg) of the Complaint, and therefore denies same.

hh.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 21(hh) of the Complaint, and therefore denies same.

## FIRST CLAIM FOR RELIEF

### (Breach of Duties of Good Faith and Loyalty)

22.     Insofar as the allegations of paragraph 22 of the Complaint require any response, Defendant incorporates herein his above responses.

23.     Defendant admits the allegations in paragraph 23 of the Complaint.

24.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 14 of the Complaint, and therefore denies same.

25.     Defendant denies the allegations in paragraph 25 of the Complaint.

26.     Defendant admits that he, Terry Ulleseit ("Ulleseit") and Denise I. George ("George") caused to be prepared an Operating Agreement for Coast to Coast, but the remaining allegations of paragraph 16 assert legal conclusions and otherwise mischaracterize the agreements reached, and Defendant therefore denies same.

27.     Defendant admits that in or around 2023 and early 2024 he, Ulleseit and George commenced discussions of how to separate Michael from Coast to Coast as a result of Ulleseit and George's greed and refusal to abide by the terms of their agreements, that they all agreed that Michael's interest in the company would be bought out, and that he would take his clients with him and continue to service them, but denies the characterization of the terms discussed and/or outlined as set forth in paragraph 17 of the Complaint, and therefore denies the allegations in paragraph 17 of the Complaint.

28.     Paragraph 28 of the Complaint asserts a legal conclusion and thus Defendant neither admits nor denies same.

Robertson, Johnson, Miller & Williamson
50 West Liberty Street, Suite 600
Reno. Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 6

29.     Paragraph 29 of the Complaint asserts a legal conclusion and thus Defendant neither admits nor denies same.

30.     Paragraph 30 of the Complaint asserts a legal conclusion and thus Defendant neither admits nor denies same.

31.     Defendant denies the allegations in paragraph 31 of the Complaint.

a.      Defendant denies the allegations in paragraph 31(a) of the Complaint.

b.      Defendant denies the allegations in paragraph 31(b) of the Complaint.

c.      Defendant denies the allegations in paragraph 31(c) of the Complaint.

d.      Defendant denies the allegations in paragraph 31(d) of the Complaint.

e.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(e) of the Complaint, and therefore denies same.

f.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(f) of the Complaint, and therefore denies same.

g.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(g) of the Complaint, and therefore denies same.

h.      Defendant denies the allegations in paragraph 31(h) of the Complaint.

i.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(i) of the Complaint, and therefore denies same.

j.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(j) of the Complaint, and therefore denies same.

k.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(k) of the Complaint, and therefore denies same.

l.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(l) of the Complaint, and therefore denies same.

m.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(m) of the Complaint, and therefore denies same.

n.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(n) of the Complaint, and therefore denies same.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno. Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 7

o.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(o) of the Complaint, and therefore denies same.

p.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(p) of the Complaint, and therefore denies same.

q.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(q) of the Complaint, and therefore denies same.

r.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(r) of the Complaint, and therefore denies same.

s.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(s) of the Complaint, and therefore denies same.

t.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(t) of the Complaint, and therefore denies same.

u.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(u) of the Complaint, and therefore denies same.

v.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(v) of the Complaint, and therefore denies same.

w.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(w) of the Complaint, and therefore denies same.

x.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(x) of the Complaint, and therefore denies same.

y.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(y) of the Complaint, and therefore denies same.

z.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(z) of the Complaint, and therefore denies same.

aa.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(aa) of the Complaint, and therefore denies same.

bb.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(bb) of the Complaint, and therefore denies same.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 8

cc.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(cc) of the Complaint, and therefore denies same.

dd.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(dd) of the Complaint, and therefore denies same.

ee.    Defendant denies the allegations in paragraph 31(ee) of the Complaint.

ff.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(ff) of the Complaint, and therefore denies same.

gg.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(gg) of the Complaint, and therefore denies same.

hh.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 31(hh) of the Complaint, and therefore denies same.

## SECOND CAUSE OF ACTION [sic]

### (Removal of Manager)

32.    Insofar as the allegations of paragraph 32 of the Complaint require any response, Defendant incorporates herein his above responses.

33.    Defendant denies the allegations in paragraph 33 of the Complaint.

34.    Defendant denies the allegations in paragraph 34 of the Complaint.

a.    Paragraph 34(a) of the Complaint asserts a legal conclusion and thus Defendant neither admits nor denies same.

b.    Paragraph 34(b) of the Complaint asserts a legal conclusion and thus Defendant neither admits nor denies same.

c.    Paragraph 34(c) of the Complaint asserts a legal conclusion and thus Defendant neither admits nor denies same.

d.    Paragraph 34(d) of the Complaint asserts a legal conclusion and thus Defendant neither admits nor denies same.

## THIRD CAUSE OF ACTION [sic]

### (Diversion of Business)

35.     Insofar as the allegations of paragraph 35 of the Complaint require any response, Defendant incorporates herein his above responses.

36.     As a result of being shut out of the company by Ulleseit and George, Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 36 of the Complaint, and therefore denies same

37.     Defendant denies the allegations in paragraph 37 of the Complaint.

38.     Defendant denies the allegations in paragraph 38 of the Complaint.

39.     Defendant denies the allegations in paragraph 39 of the Complaint.

40.     Defendant denies the allegations in paragraph 40 of the Complaint.

41.     Defendant admits that he dedicated significant time, energy, and effort into Coast to Coast such that it developed and had extensive business in the hole in one insurance coverage sales, promotion and event industry with profits during each year of its business, but clarifies that these profits were not shared equally among the managers, and thus denies the remaining allegations in paragraph 41 of the Complaint.

42.     Defendant denies the allegations in paragraph 42 of the Complaint.

43.     Defendant denies the allegations in paragraph 43 of the Complaint.

44.     Defendant denies the allegations in paragraph 44 of the Complaint.

45.     Defendant denies the allegations in paragraph 45 of the Complaint.

### FOURTH CAUSE OF ACTION

**(Misappropriation of Trade Secrets**

**Nevada Uniform Trade Secret Act NRS 600A.01 *et seq.*)**

46.     Insofar as the allegations of paragraph 46 of the Complaint require any response, Defendant incorporates herein his above responses.

47.     Defendant admits that he has served as a manager of Coast to Coast since the company's inception, but denies the remaining allegations in paragraph 47 of the Complaint.

48.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 48 of the Complaint, and therefore denies same.

49.     Defendant denies the allegations in paragraph 49 of the Complaint.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 10

50.     Defendant denies the allegations in paragraph 50 of the Complaint.

51.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51 of the Complaint, and therefore denies same.

a.     Defendant denies the allegations in paragraph 51(a) of the Complaint.

b.     Defendant denies the allegations in paragraph 51(b) of the Complaint.

c.     Defendant denies the allegations in paragraph 51(c) of the Complaint.

d.     Defendant denies the allegations in paragraph 51(d) of the Complaint.

e.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(e) of the Complaint, and therefore denies same.

f.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(f) of the Complaint, and therefore denies same.

g.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(g) of the Complaint, and therefore denies same.

h.     Defendant denies the allegations in paragraph 51(h) of the Complaint.

i.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(i) of the Complaint, and therefore denies same.

j.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(j) of the Complaint, and therefore denies same.

k.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(k) of the Complaint, and therefore denies same.

l.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(l) of the Complaint, and therefore denies same.

m.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(m) of the Complaint, and therefore denies same.

n.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(n) of the Complaint, and therefore denies same.

o.     Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(o) of the Complaint, and therefore denies same.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno. Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 11

p.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(p) of the Complaint, and therefore denies same.

q.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(q) of the Complaint, and therefore denies same.

r.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(r) of the Complaint, and therefore denies same.

s.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(s) of the Complaint, and therefore denies same.

t.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(t) of the Complaint, and therefore denies same.

u.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(u) of the Complaint, and therefore denies same.

v.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(v) of the Complaint, and therefore denies same.

w.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(w) of the Complaint, and therefore denies same.

x.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(x) of the Complaint, and therefore denies same.

y.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(y) of the Complaint, and therefore denies same.

z.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(z) of the Complaint, and therefore denies same.

aa.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(aa) of the Complaint, and therefore denies same.

bb.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(bb) of the Complaint, and therefore denies same.

cc.      Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 51(cc) of the Complaint, and therefore denies same.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 12

1          dd.     Defendant is currently without sufficient information to form a belief as to

2   the truth of the allegations in paragraph 51(dd) of the Complaint, and therefore denies same.

3          ee.     Defendant denies the allegations in paragraph 51(ee) of the Complaint.

4          ff.     Defendant is currently without sufficient information to form a belief as to

5   the truth of the allegations in paragraph 51(ff) of the Complaint, and therefore denies same.

6          gg.     Defendant is currently without sufficient information to form a belief as to

7   the truth of the allegations in paragraph 51(gg) of the Complaint, and therefore denies same.

8          hh.     Defendant is currently without sufficient information to form a belief as to

9   the truth of the allegations in paragraph 51(hh) of the Complaint, and therefore denies same.

10      52.     Defendant denies the allegations in paragraph 52 of the Complaint.

11      53.     Defendant denies the allegations in paragraph 53 of the Complaint.

12      54.     Defendant denies the allegations in paragraph 54 of the Complaint.

13      55.     Defendant denies the allegations in paragraph 55 of the Complaint.

14      56.     Defendant denies the allegations in paragraph 56 of the Complaint.

15      57.     Paragraph 57 of the Complaint asserts a legal conclusion and thus Defendant

16   neither admits nor denies same.

17      58.     Paragraph 58 of the Complaint asserts a legal conclusion and thus Defendant

18   neither admits nor denies same.

19      59.     Defendant is currently without sufficient information to form a belief as to the

20   truth of the allegations in paragraph 59 of the Complaint, and therefore denies same.

21      60.     Defendant is currently without sufficient information to form a belief as to the

22   truth of the allegations in paragraph 60 of the Complaint, and therefore denies same.

23      61.     Paragraph 61 of the Complaint asserts a legal conclusion and thus Defendant

24   neither admits nor denies same.

25      62.     Defendant denies the allegations in paragraph 62 of the Complaint.

26      63.     Defendant denies the allegations in paragraph 63 of the Complaint.

27      64.     Defendant denies the allegations in paragraph 64 of the Complaint.

28      65.     Defendant denies the allegations in paragraph 65 of the Complaint.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 13

66.    Defendant denies the allegations in paragraph 66 of the Complaint.

67.    Defendant denies the allegations in paragraph 67 of the Complaint.

68.    Defendant denies the allegations in paragraph 68 of the Complaint.

69.    Defendant denies the allegations in paragraph 69 of the Complaint.

70.    Defendant denies the allegations in paragraph 70 of the Complaint.

71.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 71 of the Complaint, and therefore denies same.

72.    Defendant denies the allegations in paragraph 72 of the Complaint.

73.    Paragraph 73 of the Complaint asserts a legal conclusion and thus Defendant neither admits nor denies same.

74.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 74 of the Complaint, and therefore denies same.

75.    Defendant denies the allegations in paragraph 75 of the Complaint.

76.    Defendant denies the allegations in paragraph 76 of the Complaint.

77.    Defendant denies the allegations in paragraph 77 of the Complaint.

78.    Defendant denies the allegations in paragraph 78 of the Complaint.

79.    Defendant denies the allegations in paragraph 79 of the Complaint.

## **FIFTH CLAIM FOR RELIEF**

**(Tortious/Intentional Interference with Prospective Economic Advantage**

**Against Defendant)**

80.    Insofar as the allegations of paragraph 80 of the Complaint require any response, Defendant incorporates herein his above responses.

81.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 81 of the Complaint, and therefore denies same.

82.    Defendant denies the allegations in paragraph 82 of the Complaint.

83.    Defendant denies the allegations in paragraph 83 of the Complaint.

84.    Defendant denies the allegations in paragraph 84 of the Complaint.

85.    Defendant denies the allegations in paragraph 85 of the Complaint.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno. Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 14

1    86.    Defendant denies the allegations in paragraph 86 of the Complaint.

2    87.    Defendant denies the allegations in paragraph 87 of the Complaint.

3    88.    Defendant denies the allegations in paragraph 88 of the Complaint.

4    89.    Defendant denies the allegations in paragraph 89 of the Complaint.

5                            **SIXTH CLAIM FOR RELIEF**

6    **(Tortious/Intentional Interference with Contractual Relationships Against All Defendant)**

7    90.    Insofar as the allegations of paragraph 90 of the Complaint require any response,

8    Defendant incorporates herein his above responses.

9    91.    Defendant denies the allegations in paragraph 91 of the Complaint.

10   92.    Defendant denies the allegations in paragraph 92 of the Complaint.

11   93.    Defendant denies the allegations in paragraph 93 of the Complaint.

12   94.    Defendant denies the allegations in paragraph 94 of the Complaint.

13   95.    Defendant denies the allegations in paragraph 95 of the Complaint.

14   96.    Defendant denies the allegations in paragraph 96 of the Complaint.

15                           **SEVENTH CLAIM FOR RELIEF**

16                              **(Misrepresentation)**

17   97.    Insofar as the allegations of paragraph 97 of the Complaint require any response,

18   Defendant incorporates herein his above responses.

19   98.    Defendant is currently without sufficient information to form a belief as to the

20   truth of the allegations in paragraph 98 of the Complaint, and therefore denies same.

21   99.    Defendant is currently without sufficient information to form a belief as to the

22   truth of the allegations in paragraph 99 of the Complaint, and therefore denies same.

23   100.    Defendant denies the allegations in paragraph 100 of the Complaint.

24   101.    Defendant denies the allegations in paragraph 101 of the Complaint.

25   102.    Defendant denies the allegations in paragraph 102 of the Complaint.

26                            **EIGHTH CLAIM FOR RELIEF**

27   **(Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**

28                              **Against Defendant)**

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 15

103.    Insofar as the allegations of paragraph 103 of the Complaint require any response, Defendant incorporates herein his above responses.

104.    Paragraph 104 of the Complaint asserts a legal conclusion and thus Defendant neither admits nor denies same.

105.    Paragraph 105 of the Complaint asserts a legal conclusion and thus Defendant neither admits nor denies same.

106.    Paragraph 106 of the Complaint asserts a legal conclusion and thus Defendant neither admits nor denies same.

107.    Defendant denies the allegations in paragraph 107 of the Complaint.

108.    Defendant denies the allegations in paragraph 108 of the Complaint.

109.    Defendant denies the allegations in paragraph 109 of the Complaint.

## NINTH CLAIM FOR RELIEF

### (Civil Conspiracy Against Defendant)

110.    Insofar as the allegations of paragraph 110 of the Complaint require any response, Defendant incorporates herein his above responses.

111.    Defendant denies the allegations in paragraph 111 of the Complaint.

112.    Defendant denies the allegations in paragraph 112 of the Complaint.

113.    Defendant denies the allegations in paragraph 113 of the Complaint.

114.    Defendant denies the allegations in paragraph 114 of the Complaint.

115.    Defendant denies the allegations in paragraph 115 of the Complaint.

116.    Defendant denies the allegations in paragraph 116 of the Complaint.

## TENTH CLAIM FOR RELIEF[2]

### (Tortious/Intentional Interference with Prospective Economic Advantage

### Against Defendant)

117.    Insofar as the allegations of paragraph 117 of the Complaint require any response, Defendant incorporates herein his above responses.

---

[2] This appears to be an identical duplication of Plaintiffs' alleged Fifth Claim for Relief.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

118.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 118 of the Complaint, and therefore denies same.

119.    Defendant denies the allegations in paragraph 119 of the Complaint.

120.    Defendant denies the allegations in paragraph 120 of the Complaint.

121.    Defendant denies the allegations in paragraph 121 of the Complaint.

122.    Defendant denies the allegations in paragraph 122 of the Complaint.

123.    Defendant denies the allegations in paragraph 123 of the Complaint.

124.    Defendant denies the allegations in paragraph 124 of the Complaint.

125.    Defendant denies the allegations in paragraph 125 of the Complaint.

126.    Defendant denies the allegations in paragraph 126 of the Complaint.

## ELEVENTH CLAIM FOR RELIEF

### (Replevin/Conversion/Claim and Delivery Against Defendant)

127.    Insofar as the allegations of paragraph 127 of the Complaint require any response, Defendant incorporates herein his above responses.

128.    Defendant denies the allegations in paragraph 128 of the Complaint.

129.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 129 of the Complaint, and therefore denies same.

130.    Defendant is currently without sufficient information to form a belief as to the truth of the allegations in paragraph 130 of the Complaint, and therefore denies same.

131.    Defendant denies the allegations in paragraph 131 of the Complaint.

132.    Defendant denies the allegations in paragraph 132 of the Complaint.

133.    Defendant denies the allegations in paragraph 133 of the Complaint.

## AFFIRMATIVE DEFENSES

1.    Plaintiffs' Complaint fails to state a cause of action upon which relief can be granted against Defendant.

2.    Plaintiffs are precluded from recovery by the principle of offset.  In the event it is determined that Plaintiffs have suffered damages, any recovery should be offset by the amount Plaintiffs owe to Defendant as a result of Plaintiffs' wrongful conduct.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno. Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 17

3.      The doctrine of unclean hands precludes Plaintiffs from obtaining any relief.

4.      Plaintiffs are precluded from recovery by the doctrine of unconscionability in that Plaintiffs have failed and refused to comply with their contracts with Defendant and the relief Plaintiffs seek would constitute the invocation of this Court's inherent equitable powers for an unconscionable purpose, i.e., to deprive Defendant of his rights.

5.      Plaintiffs are precluded from recovery by the doctrine of unjust enrichment.

6.      Plaintiffs are precluded from recovery by the doctrine of promissory estoppel.

7.      Plaintiffs are precluded from recovery by the doctrine of equitable estoppel.

8.      Plaintiffs are precluded from recovery by the doctrine of waiver.

9.      Plaintiffs are precluded from recovery by the doctrine of *in pari delicto*.

10.     Plaintiffs cannot recover on their claims due to the common law and judicial doctrines of equitable recoupment.

11.     Plaintiffs granted Defendant a license, express or implied, to perform the acts alleged in the Complaint.

12.     Plaintiffs are precluded from recovery because their bad faith actions and wrongful conduct have resulted in the discharge of any duties or obligations owed to Plaintiffs.

13.     Plaintiffs are precluded from recovery by the doctrine of laches in that they failed to timely pursue whatever remedies they claim to have at law or in equity, which delay inured to the Defendant's detriment.

14.     Plaintiffs, with full knowledge of all the facts connected with or relating to the actions alleged in the Complaint, ratified and confirmed in all respects the acts of Defendant by accepting the benefits to Plaintiffs accruing from such acts.

15.     As a result of Plaintiffs' acts, actions, omissions, failure to act and knowledge upon which Defendant relied to his detriment, Plaintiffs are both legally and equitably estopped from bringing this action, from proving the allegations of the Complaint and from recovering any judgment against Defendant.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 18

16.     As a result of Plaintiffs' acts, actions, omissions, failure to act and knowledge, Plaintiffs have waived any right to bring this action, prove the allegations of the Complaint, and obtain any judgment against Defendant.

17.     Defendant has, at all times, acted in good faith and has complied with each and every one of his obligations, if any, under the agreements between himself and Plaintiffs, and, as a consequence, Plaintiffs are barred from bringing the Complaint, from proving the allegations contained therein and from recovering a judgment against Defendant.

18.     Defendant acted within his scope of authority as manager of Coast to Coast and has no individual liability to Plaintiffs.

19.     The Court does not have subject matter jurisdiction over this matter.

20.     Plaintiffs' Complaint and the claims for relief contained therein alleged against Defendant are barred by the doctrine of *volenti non fit injuria*.

21.     Plaintiffs' claims, if any, are barred based on hindrance of contact.

22.     Plaintiffs' claims, if any, are barred by the failure of consideration.

23.     Plaintiffs' allegations in the Complaint are barred by the statute of frauds.

24.     Plaintiffs' conspiracy claims must fail because there are an insufficient number of parties involved to constitute a conspiracy and Defendant never reached an agreement with any other party to undertake any unlawful or improper conduct or to accomplish any unlawful or improper purpose or object.

25.     Plaintiffs' claims are barred by the fraud, conspiracy, and other wrongs perpetrated by Plaintiffs in which they entered into a relationship with Defendant for purposes of extorting Defendant.

26.     Plaintiffs' performance under the alleged agreement was absent, untimely, incomplete and/or deficient, and Plaintiffs otherwise materially breached their duties owed thereunder, and under the contract reached to separate the managers therefrom.

27.     Plaintiffs are barred from recovering attorneys' fees as damages.

28.     Defendant is informed and believes, and on that basis alleges, that recovery of punitive or exemplary damages under the Complaint is barred because said recovery would be

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 19

unconstitutional under the United States Constitution and the Nevada Constitution, as a violation of both due process and equal protection.

29.    Plaintiffs failed to effectively or properly serve Defendant with the relevant pleadings such that there has been defective and/or insufficient service of process.

30.    Plaintiffs are precluded from recovery because their bad faith actions have resulted in the discharge of any contractual obligations owed to them.

31.    Plaintiffs' damages, if any, are the result of their own illegal, fraudulent and/or inequitable conduct.

32.    Defendant's conduct was privileged, proper, lawful, necessary and/or justified.

33.    Plaintiffs negligently and/or knowingly withheld and/or destroyed evidence relevant and necessary to this matter and have hindered answering Defendant's defense.

34.    Plaintiffs failed to make good any loss, damage, or liability incurred by or inflicted upon Defendant.

35.    In order to induce Defendant to act, refrain from acting, and perform services for, in conjunction with, or on behalf of Plaintiffs, Plaintiffs made false and fraudulent statements to Defendant on which he detrimentally relied.

36.    Plaintiffs' Complaint and each and every claim for relief alleged therein against Defendant are barred by the doctrine of accord and satisfaction.

37.    Plaintiffs' claims, if any, are barred based on the unpaid services and other consideration Defendant previously provided to Plaintiffs.

38.    Defendant incorporates by this reference the affirmative defenses enumerated in NRCP Rule 8(c) to avoid waiver thereof.

39.    Pursuant to Federal Rules of Civil Procedure, and the Nevada Rules of Civil Procedure, all possible affirmative defenses may not have been alleged herein insofar as sufficient facts were not available after reasonable inquiry upon the filing of Defendant's Answer to Plaintiffs' Complaint and, therefore, Defendant reserves the right to amend this Answer to allege additional affirmative defenses if subsequent information becomes available and so warrants.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COUNTERCLAIM**

COMES NOW, Counterclaimant MICHAEL HIGGINS ("Michael"), by and through his undersigned counsel of record, the law firm of Robertson, Johnson, Miller & Williamson, and hereby counterclaims against counterdefendant TERRY ULLESEIT ("Ulleseit"), counterdefendant DENISE I. GEORGE ("George"), counterdefendant COAST TO COAST HOLE IN ONE, LLC ("Coast to Coast" or "Company") and counterdefendant Does 1 – 10 (collectively "Counterdefendants") as follows:

**JURISDICTIONAL ALLEGATIONS**

1.      At all times mentioned herein, counterclaimant Michael Higgins is an individual domiciled in the Commonwealth of Massachusetts, and is both a member and manager of Coast to Coast.

2.      At all times mentioned herein, counterdefendant Ulleseit is an individual who, on information and belief, is domiciled in Washoe County, State of Nevada, and is both a member and manager of Coast to Coast.

3.      At all times mentioned herein, counterdefendant George is an individual who, on information and belief, is domiciled in Washoe County, State of Nevada, and is both a member and manager of Coast to Coast.

4.      At all times mentioned herein, counterdefendant Coast to Coast is and has been a domestic Nevada limited liability company formed in or around April 2021, with its principal place of business in the County of Washoe, State of Nevada.

5.      At all times mentioned herein, Counterclaimant does not know the true names or capacities, whether individual, corporate, and associate or otherwise, of the counterdefendants Does 1 through 10, inclusive, and therefore sues said counterdefendants under fictitious names. Counterclaimant will amend this Counterclaim to show their true names and capacities when and if the same have been ascertained.

6.      Michael is informed and believes that each of the Counterdefendants is liable for the damages to him in some manner.

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 21

7.    The Court has diversity jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1332(a) as this matter is between citizens of different states with an amount in controversy that exceeds $75,000, exclusive of interest and costs.

8.    In the event the Court does not grant the alternative motion for change of venue filed by specially-appearing Defendants TRACY HIGGINS and HOLE IN ONE PROMOTIONS, LLC, then venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2) and LR IA 1-6, in that Counterdefendants live and conduct business in Washoe County, Nevada, which is within the unofficial Northern Division of this District.

<strong><u>GENERAL ALLEGATIONS</u></strong>

<strong><u>Origin and Formation of Coast to Coast</u></strong>

9.    Michael has worked for the New England Professional Golfers Association of America ("PGA") for approximately 27 years and has extensive contacts in the golf industry.

10.    One such contact is an individual named David Nelson, who is the former owner of a hole-in-one prize indemnification insurance company known as Hole in One U.S.A.

11.    Michael is informed and believes, and on that basis alleges, that Mr. Nelson sold his company to a large insurance broker and consultant company known as NFP Property & Casualty Services, Inc. ("NFP").

12.    Michael is informed and believes, and on that basis alleges, that NFP later sold Hole in One U.S.A. to another hole-in-one prize indemnification insurance company known as Hole in One International.

13.    Michael is informed and believes, and on that basis alleges, that Ulleseit and George have each been working in the hole-in-one insurance industry for roughly 20 years.

14.    Michael is informed and believes, and on that basis alleges, that Ulleseit and George previously worked for NFP, but when NFP sold Hole in One U.S.A. to Hole in One International, both Ulleseit and George were terminated in or around late 2020.

15.    In or around early 2021, Mr. Nelson introduced Michael to Ulleseit and George. Thereafter, Michael, Ulleseit, and George commenced discussions about forming a company to assist customers and clients with providing hole in one coverage and other prizes for golf events.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

16.     A company like Coast to Coast is effectively a middleman between the customer and the insurance underwriter, enabling the customer to purchase prize indemnification for hole in one prizes, putting contests, or similar events.

17.     The hole in one prize indemnification business is seasonal, with contracts written generally from the months of April through November.

18.     Michael, Ulleseit, and George eventually decided to start a company together.  In the organizational discussions leading up to the formation of the new business, Michael, Ulleseit, and George agreed, among other decisions, that they would each have equal ownership, they would be the only managers and each would have equal authority ("Managers"), and that all material decisions made in relation to or on behalf of the Company would be made unanimously among the three Managers (hereinafter, the "Formation Agreements").

19.     In or around April 2021, the three individuals formed Coast to Coast Hole in One, LLC, in accordance with the Formation Agreements.

20.     They then caused to be filed formation documents for Coast to Coast with the Nevada Secretary of State in which each is listed as a member and manager.  (See Ex. 1 to Complaint (Formation Articles)).  They also caused to be prepared an Operating Agreement intended to incorporate the terms of the Formation Agreements.  (See Ex. 2 to Complaint (Operating Agreement).)  Collectively, the Formation Agreements and the Operating Agreement, to the extent it is consistent with the Formation Agreements, represent the organizational contracts that the Managers agreed to, which shall hereinafter be jointly referred to as the "Organizational Contracts."

21.     No one signed the Operating Agreement, but each of the members and Managers initially engaged in a course of conduct consistent with the Organizational Contracts.  As the business grew and became successful, however, Ulleseit and George decided to eliminate Michael from the Company and thus stopped acting in conformance with the Managers' pre-formation discussions, and the Organizational Contracts.

22.     The Operating Agreement lists each of Michael, Ulleseit, and George's sharing ratios as "100%."  (See id. at p.11).

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 23

23.    The Operating Agreement maintains that "[t]he Company shall be managed by MIKE HIGGINS, DENISE I. GEORGE and TERRY ULLESEIT," i.e., the Managers.  (Id. at ¶7.1).

24.    The Operating Agreement further requires that "net profits, net losses, and other items of income, gain, loss, deduction and credit of the Company shall be allocated among the Members in accordance with their Sharing Ratios."  (Id. at ¶4.1).

25.    The Operating Agreement also requires as follows under ¶4.2:

Distributions.  The Managers may make distributions to the Members from time to time.  Distributions may be made *only after the Managers determine* in their reasonable judgment, that the Company has sufficient cash on hand which exceeds the current and the anticipated needs of the Company to fulfill its business purposes (including, needs for operating expenses, debt service, acquisitions, reserves and mandatory distributions, if any).  *All distributions shall be made to the Members in accordance with their Sharing Ratios.* Distributions shall be in cash or property or partially in both, as determined by the Managers. No distribution shall be declared or made if, after giving it effect, the Company would not be able to pay its debts as they become due in the usual course of business or the Company's total assets would be less than the sum of its total liabilities plus, the amount that would be needed if the Company were to be dissolved at the time of the distribution, to satisfy the preferential rights of other Members upon dissolution that are superior to the rights of the Members receiving the distribution. All distributions in kind shall be valued at the asset's fair market value as determined by independent third party appraisals or as otherwise mutually agreed upon by the Members.

In the event that distributions paid during any calendar year to any Member exceed that Member's share of the profits of the Company for such calendar year as finally computed, *such member shall pay to the Company the excess of such distributions paid during such calendar year over such Member's distributive share of the profits of the Company for such calendar year*.

(Id. at ¶4.2) (Emphasis added).

26.    In addition, the Operating Agreement requires as follows:

7.3    Standard of Care Liability.    The Managers shall discharge their duties as Managers in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner, it reasonably believes to be in the best interests of the Company. *The Managers shall not be liable for any monetary damages to the Company for any breach of such duties except for receipt of a financial benefit to which the Managers are not entitled; voting for or assenting to a distribution to Members in violation of this Operating Agreement or the Act; or a knowing violation of the law*.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 24

7.4    <u>Manager's Compensation</u>.  The Managers shall receive such compensation ***as the Members agree upon***. The Managers shall be reimbursed by the Company for all of their reasonable costs and expenses incurred on behalf of the Company in addition to his annual management fee, including but not by way of limitation, the Manager's general and administrative expenses, office overhead, supplies, travel, and salaries of office and technical personnel directly allocable to the Company's activities.

(<u>Id</u>. at ¶¶ 7.3, 7.4) (Emphasis added).

### **Managers' Duties, Responsibilities & Actions upon Formation of Coast to Coast**

27.    In light of the industry-specific experience of Ulleseit and George, and the list of clients and customers they brought to the business from having worked in the industry for approximately 20 years, their focus from the inception of the Company was on sales, securing new contracts, and generating revenue for the new business.

28.    In contrast, Michael was charged with focusing on operational tasks such as: setting up bank and credit card accounts, securing error and omission ("E&O") insurance coverage, finding a website developer, logo designers, an e-commerce platform, accounting software (e.g., QuickBooks), establishing a Google drive for company information, creating social media accounts, setting up a phone system, enlisting signage vendors for sign placements at golf tournaments, and identifying appropriate tax professionals, merchant processors, and, critically, insurance underwriters to work with the Company so Coast to Coast could actually offer the Company's primary product to its customers – services for prize indemnification.

29.    Once the Company was up and running and generating revenue through its services, Michael took on the additional and time consuming task of settling claims when a hole in one (or similar prize) did occur at an event, which included working with the insurance underwriter, the shot maker, and the witnesses to verify the hole in one shot was made, and thereafter ensure that all the pertinent paperwork was completed so that the check(s) or other items could be issued to the contest winners.

30.    Counterdefendants Ulleseit and George regularly discounted and otherwise refused to recognize the enormous amount of time Michael spent on operational tasks, like resolving claims, despite being a critical aspect of a hole in one prize indemnification company.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno. Nevada 89501

31.     Moreover, Michael was tasked with arranging and otherwise securing supplemental prizes – such as golf clubs – won by players if they made a hole in one at golf events that Coast to Coast insured, at a substantial savings to the company.  Michael saved the company thousands of dollars in the process, but these cost savings were not recognized or appreciated by Counterdefendants Ulleseit and George.

32.     On top of handling the vast majority of the operational tasks for the Company, Michael also worked extremely hard to bring in new customers (i.e., new contracts), none of whom he had prior to going into the business venture with Ulleseit and George, to contribute to the Company's revenue and sales.

33.     Notably, however, because he was focused on the operational tasks as agreed to by the Managers, he regularly introduced prospective customers to Ulleseit and George to try to help them – and thus the Company as a whole – generate more business.  Instead of acknowledging these efforts and new customers, however, Ulleseit and George paradoxically complained that Michael was not bringing in enough revenue for the Company.

**Manager Payments**

34.     Indeed, in or around November 2021, around the conclusion of Coast to Coast's first "season," Ulleseit and George began chiding Michael that he was not bringing in enough revenue to the Company, and that because he had another source of income, they informed him that he would only receive $1,000 per month in compensation allocation, while they would each receive $3,000 per month in compensation.

35.     This inequal compensation allocation was never part of the Managers' discussions or agreements in early 2021 when they agreed to start the Company, and took Michael by complete surprise.

36.     Indeed, Michael objected and explained that they were all equal members and managers of the Company and should therefore be receiving equal payment allocations as contemplated in their original discussions and reflected in the Operating Agreement.

37.     Michael further explained that while revenue generation is important to any business, so too are the operational tasks that allow a company to run and prosper, which is

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 26

exactly the type of tasks he was performing pursuant to the discussions and agreement he had with Ulleseit and George as to his initial role when they formed the Company.

38.    Ulleseit and George refused to acknowledge Michael's extensive efforts to get the Company up and running and explanations about the value he brought to the Company, and insisted that he only receive $1,000 per month, while they received $3,000 per month.

39.    In an effort to keep the newborn business intact and operating with his new partners, Michael reluctantly agreed to accept only $1,000 per month initially, but with the clear understanding that once Company revenues increased, his monthly compensation allocation would increase, and that he would also be made whole – i.e., retroactive payment allocations commensurate with the disparate payments Ulleseit and George effectuated to themselves.

40.    Thereafter, Michael, in addition to continuing with his operational duties, also ramped up his efforts to build a client base and bring in additional revenue to the Company. Indeed, in year two, Michael increased the number of contracts he generated for the Company by approximately three times from year one.  And in year three, he increased the number of contracts he generated for the Company by approximately five times from year two.

41.    In or around August of 2022, after Coast to Coast's first year in business, Michael, Ulleseit, and George agreed – in accordance with the explicit terms of the Operating Agreement – that they would each receive an equal distribution of $25,000 each.

42.    In or around the summer or fall of 2022, Michael was reviewing Coast to Coast bank statements and noticed that Ulleseit and George had increased their monthly compensation allocations to themselves to $4,000 without ever informing Michael.

43.    This was an alarming development for Michael, as Ulleseit and George had previously sought his approval on the monthly payment allocations.  But now that the Company had a solid foundation through Michael's efforts and was starting to gain traction in the industry, suddenly Ulleseit and George started making major Company decisions without Michael's input, and certainly without his consent as agreed upon by all the Managers when they started the Company.  In other words, it appeared to Michael that Ulleseit and George were initiating efforts to try and eliminate him from the Company now that it was up and running.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 27

44.     When Michael raised the issue of Ulleseit and George giving themselves monthly allocation raises without his consent, they became confrontational and claimed that they deserved because they were generating more revenue for the Company.

45.     In response, Michael reminded Ulleseit and George that each of the three of them were equal owners and managers of the company, and that these types of material decisions required discussion among, and approval by, all of the Managers.  He further explained to them that his time commitments to the Company had and would continue to increase, including time spent on generating new client leads to help grow company revenue, and that he should be receiving far more than $1,000 per month in allocations.

46.     Ulleseit and George continued to discount Michael's efforts and refused to increase his compensation to more than $1,000 per month.   While disappointed at their recalcitrance, he did not want to press the issue further out of concern for harming the relationship and future of the Company, but did again make it clear that once Company revenues increased, his monthly compensation allocation would increase, and that he would also be made whole – i.e., retroactive payment allocations commensurate with the disparate payments Ulleseit and George had improperly granted to themselves.

## Manager Disagreements Expand

47.     As Coast to Coast entered its second year of business in the spring of 2022, the Managers agreed that the company should start investing in advertising and marketing to further grow the business.  Without actually discussing *how* that would be achieved, or putting together any sort of budget, however, Ulleseit and George proceeded in or around June 2022 to start spending Company funds to market and advertise Coast to Coast by way of a LinkedIn campaign through a third party advertisement consultant.  They also arranged to pay for advertisements on Google.   Michael was not consulted about these expenditures and only learned of them by reviewing Company credit card statements in or around July 2022.

48.     When Michael approached Ulleseit and George to discuss the expenditures with this third-party advertisement consultant, and whether any customers or leads were being

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 28

generated from the advertising expenditures, they initially refused to share any details, and only reluctantly shared the consultant's name when pressed by Michael.

49.     Ulleseit and George similarly refused to discuss any sort of actual budget or plan as to how the Company could best maximize monies spent on advertising to generate the most potential customers for the benefit of Coast to Coast.

50.     Notably, Ulleseit and George would not share whether any business was even being generated through these undiscussed advertisement expenditures.  And, when new customers did come in as a result of this mystery advertiser, Ulleseit and George proclaimed the new customers belonged to them.  This, despite the fact that Michael, as an equal owner, was contributing and otherwise sharing an equal portion of the Company's expenses.

51.     Michael continuously tried to explain the contradiction of their words and actions – on the one hand, they reprimanded Michael for not bringing in enough business, yet would not even share the name of the advertiser – or any new customers generated therefrom – with Michael such that he could bring in more business.

52.     Michael also reminded them of the concept of an equal partnership and that it should not matter who brings in the most new customers, as long as the business is growing through everyone's collective efforts, and the company is prospering, *that* is what is best for the long-term future of the company.

53.     In or around the spring of 2023, at the end of the company's second year in business, Ulleseit and George refused to pay Michael an equal distribution (i.e., one third) as clearly agreed upon when the Managers formed Coast to Coast.

54.     Despite Michael's best efforts to, once again, explain his incredible efforts, contributions, and entitlement to an equal distribution based upon those contributions and the terms of the Managers' Organizational Contracts, Ulleseit and George rejected his explanations and proceeded to pay themselves approximately $43,000 each for their annual distributions, while only paying Michael approximately $14,000.  These completely-unequal distributions were on top of the approximately $41,000 in monthly allocations they had each received during the year in comparison to Michael's $12,000 allocations.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 29

55.     Once again, Michael explained the inequity of their logic by reiterating that they were equal owners and the Managers under the terms of their pre-formation discussions and Organizational Contracts, and that it defies logic to require Michael to assume an equal share of the workload, risk and liability, and expenses associated with the company, but that he not receive an equal distribution at the end of each year.  Michael again made it clear that if they proceeded as such, he would need to be made whole in the future as a result the disparate payment allocations and distributions, to which Ulleseit and George agreed.

56.     Over Michael's objections, Ulleseit and George proceeded with the unequal distributions.   With the Company's increasing success after two years of operations, it was becoming clearer that Ulleseit and George felt Michael was dispensable.

57.     Indeed, throughout 2023, Ulleseit and George continued making material business decisions on behalf of the company without informing or involving Michael.  For example, in or around December 2023, Ulleseit and George issued original investment reimbursements to themselves and Michael in the amount of $10,000 without ever informing or discussing it with Michael – he simply received a check in the mail one day and was thoroughly confused as to why.  Around the same time, Ulleseit and George prepaid themselves approximately $9,000 each for their January, February, and March 2024 allocations without ever informing Michael.  While he eventually also received a $3,000 advance allocation for January, February, and March 2024, these material financial decisions were never raised by Ulleseit or George.  Counterdefendants just acted unilaterally as if they were the sole members and managers of the Company.

58.     In December 2023 alone, Ulleseit and George issued approximately $55,000 in checks from the company without ever discussing same with Michael.  They even miscoded certain checks in QuickBooks as charitable donations, when, on information and belief, those should have been coded as normal prize payout funds that should have been distributed in the normal course of the business.  In one instance, on or about December 1, 2023, they issued an approximate $5,000 payout to "Wee Ones" and coded it as a charitable contribution in QuickBooks, when that was simply a prize money payout.  Such miscoding is a significant "red

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 30

flag" for the Internal Revenue Service and puts everyone in the Company – including Michael – at significant risk of an audit and potential financial or other penalties.

59.    Equally as alarming was Michael's discovery that just a few days before Christmas in 2023, Ulleseit and George purchased approximately $2,900 in gift cards with Company funds that, on information and belief, they improperly used for themselves.    On the same day they purchased the gift cards, they reimbursed themselves over $1,000 ostensibly for printer ink.    This, despite the fact that they each had a Company credit card.

60.    Michael also later learned that Ulleseit and George had surreptitiously been reaching out to several of Michaels' contacts at the PGA in what appears to be an obvious effort to poach his would-be clients, which of course would cut into the very revenue-generation stream they were scolding him for not increasing as quickly as they demanded.

**The Managers Reach Agreement to Separate Michael from Coast to Coast**

61.    In or around December 2023, at the same time they were issuing substantial checks on behalf of the Company without Michael's knowledge or input, Ulleseit and George approached Michael and suggested that Coast to Coast be split into a West Coast branch that they would handle, and an East Coast branch that Michael would handle.    Given the actions of Ulleseit and George to date, however, particularly with respect to company finances, Michael respectfully declined.

62.    Shortly thereafter, Ulleseit and George then offered to buy Michael out of the company so that the parties could go their separate ways.    Ulleseit and George offered to pay Michael approximately $79,000 to separate immediately, or approximately $87,000 if he waited until June to separate.

63.    Multiple discussions and communications ensued in early 2024 and the parties reached the basic terms of an agreement for Michael to separate from Coast to Coast, which terms are as follows:

    a.    Ulleseit and George would pay Michael $79,000 to buy out his 1/3 interest in Coast to Coast;

b. Any Coast to Coast clients that were initiated or otherwise "belonged" to Ulleseit and George would remain with them under the Coast to Coast brand;

c. Any clients that were initiated or otherwise "belonged" to Michael would go with him so that he and/or Tracy Higgins, Michael's wife (hereinafter "Tracy"), could start their own separate hole in one insurance business; and

d. The Managers would not contact one another's existing clients going forward, but could generate new leads and new customers through or with any non-existing clients.

64.    In exchange, and otherwise as a show of good faith to start effectuating Michael's separation from the company, Michael: arranged for the contact and login information to the Google drive storing Coast to Coast's company information to Ulleseit and George; removed himself Coast to Coast's United Parcel Service account; provided Ulleseit and George with the pertinent information for Coast to Coast's website domain name and ownership, as well as the Company's social media accounts login information; and connected them with his insurance contact for E&O insurance so that the Company's coverage would not be interrupted during the separation process.

65.    As a result of the Managers' agreement to "separate" Michael from Coast to Coast, Tracy created a new company in the Commonwealth of Massachusetts by the name of Hole in One Promotions, LLC ("Promotions") that listed both herself and Michael as the managers.

66.    In order to operate Promotions, the insurance underwriter for the specialty insurer – Tokio Marine HCC – who works with numerous hole in one prize indemnification companies, including Promotions, required Tracy (or another person affiliated with the company) to have an insurance producers license in the state of incorporation.  Accordingly, Tracy also applied for and took an examination to obtain her Massachusetts insurance producers license, which she passed on her first attempt and obtained on or about March 13, 2024.

67.    Michael has since been removed as a manager of Promotions and no longer has any ownership interest in, nor any management role relating to, the Promotions company.

**The Separation Agreement**

68.    After the Managers' reached an agreement on the terms of Michael's separation from Coast to Coast, and around the time when Michael began willfully turning over company information to Ulleseit and George, they retained an attorney to draft a "Separation Agreement" that attached as an exhibit a list of who they considered to be Michael's clients.  (See Exhibit 1 (March 5, 2024 draft Separation Agreement); Exhibit 2 (Proposed Exhibit B to Separation Agreement provided by Ulleseit and George with Michael's Client List).

69.    Michael received the draft Separation Agreement from Ulleseit and George on or about March 7, 2024.

70.    To his complete shock and surprise, the draft Separation Agreement from Ulleseit and George contained a "Non-Competition" provision, (see Exhibit 1 at ¶¶13-16), which was *never* discussed or agreed upon, and in fact was the *exact opposite* of what the Managers had been discussing for months and had agreed upon.  It was unequivocal in all the discussions and agreement to that point that Michael and/or Tracy would be taking Michael's clients to start a new business.

71.    Indeed, the disingenuousness of the sudden attempt by Ulleseit and George to insert a "Non-Competition" clause is belied by the *very terms* of paragraph 15 within the section of the draft Separation Agreement discussing "Non-Competition."  As drafted by Ulleseit and George (or their attorney), paragraph 15 reads as follows:

> 15.    Mike and Tracy have customers that they have identified and serviced, listed on their attached customer list, Exhibit B.  ***Mike and Tracy will keep these customers for their own or a new business they start after this Separation Agreement and nothing herein shall restraint [sic] them from continuing their relationship and servicing of and continuing their business with those customers in a different name.***

(Ex. 1 (3/5/24 Draft Separation Agreement)) (Emphasis added).  Even this provision *within the "Non-Competition" portion of the draft Separation Agreement* makes plain that the Managers had discussed and agreed that Michael and/or his wife Tracy could start a new hole in one insurance business.  Yet, inexplicably, Ulleseit and George were suddenly demanding in paragraphs 13 and 14 of the draft Separation Agreement that neither Michael *nor* Tracy – who

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 33

1    has never been a manager or even an employee of Coast to Coast – could compete with Coast to

2    Coast *for a period of five (5) years*.  (See id. at ¶¶ 13-14).

3        72.    Michael retained his own counsel to review the terms of the draft Separation

4    Agreement, and sent his "redline" changes back to Ulleseit and George on or about March 27,

5    2024.  Due to the agreement previously reached between the Managers that Michael and/or

6    Tracy could *and would* be starting a separate business with "his" clients, Michael struck from the

7    draft Separation Agreement the "Non-Competition" clause in its entirety, and made other

8    changes to the document, including the removal of Tracy's name, since she had never been a

9    manager or an employee of the company.  (See Ex. 3 (Michael's March 27, 2024 redlines to draft

10   Separation Agreement).)

11       73.    Michael sent his changes back to Ulleseit and George via email, which email

12   reads in its entirety as follows:

13       Hi Terry & Denise,

14       I just received the suggestions from my attorney this afternoon.  Thanks for your
15       patience.

16       Apparently leaving all changes in red is an attorney thing, and it saves time from
17       comparing documents each time.

18       I plan on honoring our agreement to not contact your clients and you not
         contact mine.  There is plenty of business out there.  You will need to provide me
19       a list of your clients so I know who to stay away from.

20       As you know Tracy was not an owner of the company and I had her removed
21       from this agreement.  Your attorney also wrote that we can not do business with
         anyone but the clients on our list.  We obviously changed that.
22
23       In the agreement we also made everything equitable.  If it applied to me, it
         should also apply to you.
24
25       It might be best to jump on a call and walk through these, which I am happy to
         do at any time.  This way we can talk through any changes.  Then you can
26       provide everything to your attorney with explanation.

27       Thanks very much

28       Mike

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

1    (Ex. 4 (March 27, 2024 Email).

2    74.    Despite Michael's request that they provide him with a list of the clients that

3    Ulleseit and George considered to be "their" clients for inclusion in the Separation Agreement,

4    Ulleseit and George never provided such a list, and similarly refused to just get on the telephone

5    (or videoconference) to try and discuss any outstanding details to reach a resolution.

6    75.    Instead, Michael and George exchanged a series of emails over the details of the

7    Separation Agreement, which include George confirming that the "Non-Competition" clause

8    would be omitted in its entirety.

9    76.    Still, George insisted that Tracy be included in the Separation Agreement, and

10    that she not be allowed to work in the hole in one insurance industry, despite the fact that Tracy

11    was never an employee, let alone an owner or manager of Coast to Coast.

12    77.    On or about April 9, 2024, Michael responded via email and conveyed that this

13    demand was unacceptable.   He also alerted Ulleseit and George to the fact that they were

14    soliciting Michael's clients in direct contravention of the Managers' agreement not to do so

15    pursuant to the separation discussions.

16    78.    Ulleseit and George never even responded to Michael's April 9, 2024 email.

17    Instead, they filed this lawsuit against him eight days later on April 17, 2024, which, based on

18    the volume of the pleadings, they are assumed to have been planning for weeks.

19    79.    Then, on April 19, 2024, they cut off all access to his Coast to Coast email

20    address, and then removed approximately $80,000 from the Company bank account, and, on

21    information and belief, placed that $80,000 into one or more of their personal bank accounts.

22    80.    As a result, Michael has not received any monthly payments from Coast to Coast

23    for April or May 2024, and it is anticipated that Ulleseit and George will not pay him an equal

24    portion of the annual distribution owed to him – estimated to be *at least* $30,000 per Manager –

25    which in the past has been paid out on or about the first of June.

26    81.    Michael is informed and believes, and on that basis alleges, that the recent legal

27    actions taken by Ulleseit and George have been planned for months as part of an intentional,

28    malicious effort to force Michael out of the Company without a fair payment.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 35

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### (Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing – Coast to Coast Operating Agreement)

82.     Counterclaimant Michael re-alleges each and every allegation contained in this Counterclaim, and hereby incorporates them by this reference as if fully set forth below.

83.     The Managers reached agreements prior to formally organizing Coast to Coast on how the Company would be owned and operated.  In the discussions leading up to the formation of the new business, Michael, Ulleseit, and George agreed, among other decisions, that they would each have equal ownership, they would all be managers with equal authority, and that all material decisions made for and on behalf of the Company would be made unanimously among the Managers, i.e., the Formation Agreements.

84.     These Formation Agreements were to be reflected in the terms set forth in the company's Formation Articles and Operating Agreement, and govern the Managers' conduct, i.e., collectively the Organizational Contracts.  These Organizational Contracts were and are contracts between Coast to Coast and its Managers and members – Michael, Ulleseit, and George.

85.     Pursuant to NRS 104.1304 and Nevada caselaw, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." A.C. Shaw Const., Inc. v. Washoe Cnty., 105 Nev. 913, 914, 784 P.2d 9, 9 (1989) (internal quotations omitted).  "The implied covenants of good faith and fair dealing impose a burden that requires each party to a contract to 'refrain from doing anything to injure the right of the other to receive the benefits of the agreement." Shaw v. CitiMortgage, Inc., 201 F. Supp. 3d 1222, 1251 (D. Nev. 2016), amended in part, 3:13-CV-0445-LRH-VPC, 2016 WL 11722898 (D. Nev. Nov. 1, 2016) (internal quotations and citations omitted).

86.     Ulleseit, George, and Michael are parties to the Coast to Coast Operating Agreement.  Even though the Operating Agreement is not signed, Counterdefendants Ulleseit

and George have asserted in their Complaint that it is a valid and enforceable contract.  It is unclear, however, whether the Operating Agreement is legally enforceable under Nevada law.

87.    In the pre-formation contractual discussions, all the Managers agreed they would each have equal ownership of the Company, would all be managers with equal authority, and that all material decisions made for the Company would be unanimous.

88.    Under either the Formation Agreements or the Operating Agreement, Ulleseit and George repeatedly breached these Organizational Contracts and their duties of good faith and fair dealing under same by acting as alleged in paragraphs 9 through 81 in a manner unfaithful and in contravention of their contracts by, among other actions, making important business decisions without involving or otherwise informing Michael, including, but not limited to, unilaterally increasing their monthly payment allocations in contravention of paragraph 7.4 of the Operating Agreement; refusing to pay Michael equal monthly payment allocations; distributing to themselves a far larger percentage of portions of the company's annual profits; removing approximately $80,000 from the Company's bank accounts and placing same in one or more personal accounts; and apparently misappropriating other Company assets.

89.    As a direct and proximate result of the breaches by Ulleseit and George of their contractual duties, Michael has suffered and will continue to suffer damages in excess of seventy-five thousand dollars ($75,000).

## SECOND CLAIM FOR RELIEF

### (Breach of Fiduciary Duty, Duties of Good Faith and Loyalty)

90.    Counterclaimant Michael re-alleges each and every allegation contained in this Counterclaim, and hereby incorporates them by this reference as if fully set forth below.

91.    Michael, Ulleseit, and George decided to start a company together, and in or around April 2021, the three individuals formed Coast to Coast Hole in One, LLC, with each agreeing to be a member and manager of the company.  (See Exhibit 1 (Formation Articles) and 2 (Operating Agreement) to Complaint).

92.    Ulleseit, George, and Michael are parties to the Coast to Coast Operating Agreement.  Even though the Operating Agreement is not signed, Counterdefendants Ulleseit

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 37

and George have asserted in this Complaint that it is a valid and enforceable contract.  It is unclear, however, whether the Operating Agreement is legally enforceable under Nevada law.

93.    Even if it is not legally enforceable, in the contractual discussions leading up to the formation of the new business, Michael, Ulleseit, George agreed they would each have equal ownership of the Company, they would all be managers with equal authority, and that all decisions made for the Company would be unanimous.

94.    The Operating Agreement, at paragraph 7.3, sets forth the Managers' standard of care liability as follows:

> 7.3    <u>Standard of Care Liability</u>.    ***The Managers shall discharge their duties as Managers in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner, it reasonably believes to be in the best interests of the Company.*** The Managers shall not be liable for any monetary damages to the Company for any breach of such duties <u>except</u> for receipt of a financial benefit to which the Managers are not entitled; voting for or assenting to a distribution to Members in violation of this Operating Agreement or the Act; or a knowing violation of the law.

(Exhibit 2 (Operating Agreement) to Complaint ) (Emphasis added).

95.    Irrespective of these duties imposed upon each of the Managers by the Operating Agreement, including Ulleseit and George, NRS 86.298 imposes upon them fiduciary duties as set forth in that statute.

96.    Ulleseit and George have, and continue to be at all times relevant herein, bound by certain fiduciary duties, including the duty of good faith and loyalty, to not only Michael as the third manager, but also to the Company, Coast to Coast.  Specifically, Ulleseit and George, as managers, are obligated to maintain, in good faith, the Company's, the members', and the other Managers' best interests over their personal, pecuniary interests.

97.    Ulleseit and George have breached their fiduciary duties in at least following respects:

a.    Reaching and making material business operation decisions for Coast to Coast without involving Michael as the third, equal owner, member, and manager.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno. Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 38

b.      Demanding and effectuating unequal monthly payment allocations over Michael's repeated objections.

c.      Increasing their unequal, monthly s payment allocations without informing or otherwise obtaining Michael's approval.

d.      Maintaining their increased, unequal monthly payment allocations over Michael's objections.

e.      Approving substantially larger annual distributions to themselves over Michael's objections.

f.      Miscoding checks as tax-deductible charitable contributions when, on information and belief, they are not such contributions and thus placing each of the Managers and the company itself at substantial risk.

g.      Purchasing approximately $2,900 in gift cards for themselves with Company funds just days before Christmas;

h.      Issuing original investment reimbursements in the amount of approximately $10,0000 to each of the Managers without ever discussing same with Michael.

i.      Prepaying in December 2023 each of the Managers' unequal monthly allocations for the entire first quarter of 2024 without any input or approval from Michael.

j.      Shutting down and otherwise preventing Michael's access to his own Coast to Coast email account without notice to him and certainly without his approval.

k.      Removing approximately $80,000 from the Coast to Coast bank account and, on information and belief, placing those company funds into one or more personal bank accounts without notice to Michael and certainly without his approval.

l.      Withholding and otherwise refusing to pay Michael any monthly allocations for the months of April and May 2024.

98.     As a direct and proximate result of the breaches by Ulleseit and George of their contractual duties, Michael has suffered and will continue to suffer damages in excess of seventy-five thousand dollars ($75,000).

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno. Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 39

1

2

**THIRD CLAIM FOR RELIEF**

**(Removal of Managers)**

3      99.    Counterclaimant Michael re-alleges each and every allegation contained in this

4   Counterclaim, and hereby incorporates them by this reference as if fully set forth below.

5      100.   Counterdefendants Mr. Ullleseit and George, members and managers of Coast to

6   Coast, have engaged in the conduct described in this Counterclaim over a period in excess of 24

7   months, to the detriment of Coast to Coast and its members.  Michael is informed and believes,

8   and on that basis alleges, that the improper and illegal conduct of Ulleseit and George will

9   continue if they are allowed to remain as managers.

10      101.   Specifically, Ulleseit and George have thus far refused to restore Michael's email

11   access despite multiple requests, the $80,000 has not yet been returned to the Company bank

12   account, they have withheld any monthly allocations from Michael for April and May 2024, and

13   Michael anticipates that they will refuse to issue his annual distribution that he is entitled to

14   under the terms of the Organizational Contracts, while simultaneously issuing annual

15   distributions to themselves.

16      102.   Counterclaimant Michael therefore requests that:

17         a.    Counterdefendants Ulleseit and George be cited to appear and answer this

18   Counterclaim;

19         b.    Counterdefendants Ulleseit and George be removed from office as

20   managers of Coast to Coast;

21         c.    Counterdefendants Ulleseit and George be barred from reelection as a

22   manager of Coast to Coast;

23         d.    Counterdefendants Ulleseit and George be ordered removed from the bank

24   and credit card accounts of Coast to Coast; and

25         e.    Counterdefendants Ulleseit and George be restricted and otherwise barred

26   from making any decisions that bind the company.

27

28

**FOURTH CLAIM FOR RELIEF**

**(Fraud/Constructive Fraud/Fraud in the Inducement)**

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

103.   Counterclaimant Michael re-alleges each and every allegation contained in this Counterclaim, and hereby incorporates them by this reference as if fully set forth below.

104.   Counterdefendants Ulleseit, George, and Michael are parties to the Coast to Coast Operating Agreement.  Even though the Operating Agreement is not signed, Counterdefendants Ulleseit and George have asserted in their Complaint that it is a valid and enforceable contract, which may or may not be legally correct under Nevada Law.

105.   Even if it is not legally enforceable, in the contractual discussions leading up to the formation of the new business, Michael, Ulleseit, George agreed they would each have equal ownership of the Company, they would all be managers with equal authority, and that all decisions made for the Company would be unanimous.

106.   By virtue of their management positions, as explicitly stated in the Operating Agreement, and as set forth under NRS 86.298, Ulleseit and George owe fiduciary duties to one another, to Michael, and to Coast to Coast.

107.   Since the Company's inception in or around April 2021, Counterdefendants Ulleseit and George have repeatedly made representations and/or omissions of material fact and consequence in violation of their duties to both Michael and Coast to Coast.

108.   As one example, they repeatedly made material financial decisions without the input, involvement, or consent of Michael, and only after Michael's discovery of these material financial decisions acknowledged their actions.  In many, if not most, cases – for example with respect to Michael's monthly allocations and annual distributions – Ulleseit and George agreed that Michael would eventually be made whole.

109.   In a more recent example, Ulleseit and George agreed that Michael could separate from the company, take his clients, and start a new hole in one business to be run by himself and/or by his wife Tracy.

110.   Accordingly, Tracy started a new hole in one business in the Commonwealth of Massachusetts called Hole in One Promotions, LLC, which initially named herself and Michael as the managers of the company.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

111.    Ulleseit and George thereafter sent to Michael a draft Separation Agreement reneging on their representation and agreement that Michael could take "his" clients and start a new company by including a provision entitled "Non-Competition."

112.    When Michael rejected the "Non-Competition" provision from the Separation Agreement as a result of the managers' prior agreement, George conveyed via email on or about March 28, 2024 that "[w]e are good with the Non-Competition paragraphs being omitted."

113.    These false representations were made with the intent to induce Michael's reliance.

114.    Michael repeatedly relied upon these representations by Ulleseit and George to his detriment.

115.    By virtue of their recent actions, Ulleseit and George have made it abundantly clear that:

a.    They have no intention of involving Michael in material decisions of the company or compensating him commensurate to the level that they have compensated themselves to make him financially whole as is his right and their respective obligation under the terms of the Operating Agreement; and

b.    They have no intention of honoring their representations and agreement that Michael could take "his" clients from Coast to Coast and thereafter start a new business and/or provide those clients to his wife Tracy so that she could start a new business.

116.    Counterdefendants Ulleseit and George have gained an advantage over Michael at Michael's expense as a result of their false representations and his reliance on same.

117.    As a direct and proximate result of the fraudulent actions by Ulleseit and George, Michael has suffered and will continue to suffer damages in excess of seventy-five thousand dollars ($75,000).

118.    In addition, Michael is entitled to recover actual and punitive damages incurred as a result of the fraudulent conduct engaged in by Counterdefendants by Ulleseit and George as described hereinabove.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 42

## FIFTH CLAIM FOR RELIEF

### (Civil Conspiracy/Civil Conspiracy to Defraud)

119.    Counterclaimant Michael re-alleges each and every allegation contained in this Counterclaim, and hereby incorporates them by this reference as if fully set forth below.

120.    Counterdefendants Ulleseit and George, on behalf of themselves individually, and on behalf of each other, intentionally conspired and agreed with one another to withhold information from Michael, withhold monies from Michael, and otherwise act in concert to force Michael out of Coast to Coast once the Company became established.

121.    Counterdefendants Ulleseit and George have further taken and otherwise made overt acts of fraud in furtherance of this conspiracy, including, but not limited to those fraudulent actions set forth under Counterclaimant's Fourth Claim for Relief, which allegations are incorporated herein.

122.    This civil conspiracy and civil conspiracy to defraud Michael is being furthered by the very legal action these Counterdefendants initiated on or about April 17, 2024.

123.    In engaging in their unlawful conduct, Counterdefendants Ulleseit and George acted willfully, maliciously, and recklessly.

124.    As a direct and proximate result of the fraudulent and conspiratorial actions by Ulleseit and George, Michael has suffered and will continue to suffer damages in excess of seventy-five thousand dollars ($75,000).

125.    In addition, Michael is entitled to recover actual and punitive damages incurred as a result of the civil conspiracy and civil conspiracy to defraud engaged in by Counterdefendants by Ulleseit and George.

## SIXTH CLAIM FOR RELIEF

### (Conversion/Claim and Delivery/Replevin/Recoupment)

126.    Counterclaimant Michael re-alleges each and every allegation contained in this Counterclaim, and hereby incorporates them by this reference as if fully set forth below.

127.    Counterdefendants Ulleseit and George have wrongfully exerted dominion and ownership over the monies owed to Michael under the terms of the Managers' Organizational Contracts, including, but not limited to:

a.    The monetary sums representing the difference between Michael's monthly allocations and that of Ulleseit and George for each month that he received a lesser sum than the other managers;

b.    The monetary sums representing the difference between the annual distribution that Michael received and the higher amounts received by each of Ulleseit and George;

c.    The monetary sums for any and all costs or reimbursements owed to Michael as a manager under the terms of the Operating Agreement;

d.    Any other monetary sums owed to him as a result of the actions and inactions of Counterdefendants Ulleseit and George.

128.    Counterdefendants Ulleseit and George have further wrongfully exercised dominion and ownership over Coast to Coast and all company property and information thereof that they have access to in the course and scope of their relationship with Coast to Coast.

129.    Counterdefendants Ulleseit and George have taken wrongful possession of all of the above named and described property that belongs to Michael as a manager of Coast to Coast and treated all such property as if it were their own, and have failed to return such property to Michael as is his right as a manager of Coast to Coast.

130.    All such property must be restored and returned to Michael, or otherwise paid back and reimbursed to him.

131.    As a direct and proximate result of the fraudulent and conspiratorial actions by Ulleseit and George, Michael has suffered and will continue to suffer damages in excess of seventy-five thousand dollars ($75,000).

## SEVENTH CLAIM FOR RELIEF

### (Misrepresentation)

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 44

132.    Counterclaimant Michael re-alleges each and every allegation contained in this Counterclaim, and hereby incorporates them by this reference as if fully set forth below.

133.    Counterdefendants Ulleseit and George represented as members and managers of Coast to Coast that they would act in good faith and with loyalty to Coast to Coast and to Michael by, among other items, abiding by the terms of the Managers' Organizational Contracts.

134.    Counterdefendants Ulleseit and George further represented and agreed that Michael could separate from Coast to Coast in exchange for payment in the amount of $79,000, and that he could not only take with him "his" clients developed during the course of Coast to Coast's operations, but that he and/or his wife Tracy could start a new business in the hole in one prize indemnification industry.

135.    Specifically, on or about March 28, 2024, George conveyed via email that the "Non-Competition" clause subsequently and unilaterally inserted into a draft Separation Agreement by Ulleseit and George could and should be "omitted."

136.    Counterclaimant Michael reasonably believed and relied upon these representations to his detriment.

137.    These representations of Counterdefendants Ulleseit and George were false and intentionally, or, at the very least, negligently, made in order to induce Michael to believe and rely on their false representations such that they could retain payments in excess of $75,000 lawfully owed to Michael

138.    As a direct and proximate result of the false representations by Ulleseit and George, Michael has suffered and will continue to suffer damages in excess of seventy-five thousand dollars ($75,000).

139.    As a direct and proximate result of the false representations by Ulleseit and George, Michael has suffered irreparable harm to his reputation and future business ventures.

**EIGHTH CLAIM FOR RELIEF**

**(Declaratory Relief/Injunctive Relief/Equitable Relief)**

140.    Counterclaimant Michael re-alleges each and every allegation contained in this Counterclaim, and hereby incorporates them by this reference as if fully set forth below.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 45

141.    A dispute has arisen over the Coast to Coast Managers' respective rights, duties and obligations under the law, the Managers' Organizational Contracts, and understandings and principles of equity.

142.    This controversy is ripe for judicial determination in that Counterdefendants Ulleseit and George now seek to avoid their legal, contractual and equitable obligations and have, through their actions and assertions, otherwise disrupted the business ventures of Coast to Coast and Michael.

143.    If Counterdefendants Ulleseit and George are permitted to continue, Michael and Coast to Coast will suffer very real, substantial and irreparable harm for numerous reasons, which include without limitation, further damage to Coast to Coast's goodwill and Michael's reputation, both of which are inherently unique and irreplaceable.

144.    Moreover, Counterdefendants Ulleseit and George have breached the parties' contracts by failing to pay Michael in excess of $75,000 and it appears they will continue to breach the terms of the Operating Agreement by distributing to themselves more of the annual profits than the amounts to which they are entitled to Michael's detriment.  The Court's right to restrain a breach of contract under proper circumstances such as those presented here is well-recognized.  See Chisholm v. Redfield, 75 Nev. 502, 347 P.2d 523 (1959).

145.    Counterclaimant Michael is entitled to declaratory relief regarding his rights and the responsibilities of Counterdefendants Ulleseit and George.

146.    Counterclaimant Michael is also entitled to injunctive and equitable relief as set forth hereinbelow.

**NINTH CLAIM FOR RELIEF**

**(Dissolution of Coast to Coast)**

147.    Counterclaimant Michael re-alleges each and every allegation contained in this Counterclaim, and hereby incorporates them by this reference as if fully set forth below.

148.    Pursuant to paragraph 9.1 of the Operating Agreement, "[t]he Company shall dissolve and its affairs shall be wound up on the first to occur of the following events: . . . (a) an event of dissolution under the Act."  Under NRS 86.495, the Court "may decree dissolution of a

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 46

limited-liability company whenever it is not reasonably practicable to carry on the business of the company in conformity with the articles of organization or operating agreement."

149.    As set forth in detail hereinabove, if the Operating Agreement is determined to be invalid and unenforceable by virtue of the fact that it was never signed, then it is not possible (nor reasonably practicable) to carry on the business of the Company in conformity with said Operating Agreement and the Court may decree a dissolution under NRS 86.495.

150.    Furthermore, Counterdefendants Ulleseit and George have, consistently and repeatedly over the short existence of Coast to Coast, failed to abide by the simple terms of the Organizational Contracts with respect to material decisions of the Company, including, but not limited to allocations, payments, reimbursements, and distributions as set forth in detail above.

151.    Accordingly, and in light of the allegations set forth in this Counterclaim, all of which are incorporated herein, it is no longer reasonably practicable to carry on the business of Coast to Coast.

152.    For these reasons, Michael seeks a decree of this Court dissolving Coast to Coast, winding up its affairs, and distributing its assets, which will include reimbursement and payment of all outstanding sums owed to Michael as a result of the misconduct of both Counterdefendants Ulleseit and George.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Counterclaimant Michael requests that judgment be entered against the Counterdefendants, and each of them, as follows:

1.    For an order dissolving Coast to Coast, winding up its affairs, and distributing its assets in accordance with the Managers' equal ownership interests in the Company.

2.    Alternatively, if Coast to Coast is not dissolved, for an order removing Ulleseit and George as managers for the Company and making Michael the sole Manager.

3.    Alternatively, for equitable and injunctive relief to:

   a.    Enjoin Counterdefendants Ulleseit and George, and those acting in concert or participation with them, from transferring any property of Coast to Coast without Michael's written consent;

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 47

b.   Enjoin Counterdefendants Ulleseit and George, and those acting in concert or participation with them, from taking any affirmative action to bind Coast to Coast to any contract, be it written or verbal;

c.   Direct Counterdefendants Ulleseit and George to immediately restore Michael's access to his Coast to Coast email;

d.   Direct Counterdefendants Ulleseit and George to account to Michael and Coast to Coast for official misconduct in the management and disposition of the property of Coast to Coast, and to pay Michael and to reimburse Coast to Coast the amount of damages to the business and goodwill of Coast to Coast, and the amount of damages to the reputation of Michael in an amount that is in excess of seventy-five thousand dollars ($75,000); and

e.   Such other injunctive relief as this Court may deem just and proper to effectuate the intentions of the Managers under their Organizational Contracts.

4.   For declaratory relief as requested in the Eighth Claim for Relief.

5.   For damages in excess of in excess of seventy-five thousand dollars ($75,000) associated with Counterdefendants breaches of contract, breaches of fiduciary duties and the duties of good faith and loyalty, and all other unlawful actions in which they have engaged.

6.   For punitive and exemplary damages

7.   For attorneys' fees and costs and interest.

8.   For such other and further relief as the Court may deem just and proper.


DATED this 13th day of May, 2024.

ROBERTSON, JOHNSON
MILLER & WILLIAMSON


By: /s/ *Anthony G. Arger*
    G. David Robertson, Esq.
    Anthony G. Arger, Esq.
    *Attorneys for Defendant*

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno. Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 48

1

## **<u>CERTIFICATE OF SERVICE</u>**

2

I hereby certify that I electronically filed the foregoing **MICHAEL HIGGINS'**

3

**ANSWER TO PLAINTIFFS' COMPLAINT AND COUNTERCLAIM** with the Clerk of the

4

Court for the United States District Court by using the court's CM/ECF system on the 13th day of

5

May, 2024.

6

Pursuant to FRCP 5(b), I further certify that I caused to be delivered electronically via the

7

court's CM/ECF system, a true and correct copy to:

8

Stephen S. Kent, Esq.
Gordon Rees Scully Mansukhani, LLP

9

1 E. Liberty Street, Suite 424
Reno, NV 89501

10

skent@grsm.com

11

*Attorneys for Plaintiffs*

12

I further certify that all participants in the case are registered CM/ECF users and that

13

service will be accomplished by the CM/ECF system.

14

15

*/s/ Jessica Wright*

16

An Employee of Robertson, Johnson, Miller & Williamson

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Index of Exhibits</u>**

| <u>Exhibit</u> | <u>Description</u> | <u>Pages</u> |
|---|---|---|
| 1 | Coast to Coast Separation Agmt dated March 5, 2024 | 11 |
| 2 | Proposed Exhibit B to draft Separation Agmt dated March 5, 2024 | 2 |
| 3 | Michael's March 27, 2024 Redline Changes to draft Separation Agmt | 16 |
| 4 | Michael's March 27, 2024 Email | 1 |

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

ANSWER AND COUNTERCLAIM OF MICHAEL HIGGINS
PAGE 50